# CHARLESTON.

SALEM LODGE No. 70, KNIGHTS OF PYTHIAS, *v.* I. D. SMITH.

Submitted May 22, 1923.    Decided September 25, 1923.

1.  LANDLORD AND TENANT—*Renewal Clause in Lease Set Up As Defense Must be Certain and Definite.*

    In an action of unlawful detainer brought before a justice where a defendant seeks to interpose, as a defense, a clause in his lease which, he claims, is equivalent to a general clause of renewal of the same, for the same period and at the same rate; said clause must be certain and definite in its terms, both as to the time the lease is to extend and the rent to be paid. (p. 720).

2.  SAME—*Lessee Holding Over With Rent Payable Monthly in Advance, Held Tenant From Month to Month.*

    Holding over and continuing to pay the same rent by a lessee under a lease for five years, the rent payable monthly in advance and, "with privilege of leasing at the end of his contract, in case the property is for lease," without a new lease executed and without notice to the lessor before, or at the expiration of the first term, of his desire or election to renew said lease, renders him a tenant from month to month, and subject, as such to the rights of the landlord, and to be turned out of possession, on notice, at the end of any subsequent month.    (p. 722).

3.  SAME—*Privilege to Lease at End of Contract in Case Premises for Rent, Held too Vague and Indefinite to Constitute Defense.*

    Where a lease for five years contains a covenant giving the lessee the privilege of leasing at the end of his contract, "In case said room is for rent," said covenant is not a covenant to renew the lease for the same period and the same rental, but contemplates a new lease upon terms to be agreed upon by the parties.    The covenant is too vague and indefinite to constitute a valid covenant for renewal and cannot be set up as a defense in an action of Unlawful Detainer.    (p. 722).

4.  SAME—*Oral Renewal Lease for Five Years Held Within Statute of Frauds.*

    Where a tenant occupies a store room owned by a corporation under a written lease for five years at $50.00 per month, with a covenant therein that the tenant is to have the privilege of leasing at the end of his contract in case said room is for lease, a verbal lease thereof from the trustees of said corporation for a period of five years is void under the statute of frauds.    (722).

Error from Circuit Court, Harrison County.

Action by Salem Lodge, No. 70, Knights of Pythias, against I. D. Smith. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Steptoe & Johnson,* for plaintiff in error.

*Homer Strosnider and Robinson & Robinson,* for defendant in error.

MCGINNIS, JUDGE:

This is an action of unlawful detainer and comes to this court on a writ of error from the Circuit Court of Harrison county.

The record discloses that, on the 2nd day of August, 1915, the Central Land Company, a co-partnership, was the owner of a certain lot in the city of Salem, upon which there was a three story brick building; on that day, said co-partnership, by its trustee, Randolph, leased the west room on the first floor of said building to defendant, I. D. Smith, for a term of five years from said date, which contract contains the following covenant which is the main subject of the controversy in this case:

> "First party agrees to give second party *the prefer-ence in leasing at the end of this contract in case said room is for lease.*"

The defendant immediately took possession of the room and was in possession at the institution of this action, on August 4, 1921. On the 6th day of October, 1919, the said Land Company conveyed the lot, including the brick building and the room occupied by the defendant, to Salem Lodge Number Seventy Knights of Pythias, a West Virginia corporation. Some time in May, 1920, the defendant inquired of a Mr. Schutte who was, at that time, Master of Finance of said lodge, who the proper authorities were to whom he should apply to rent or renew his lease, and was told by Schutte that the trustees had charge of the room. Schutte also, upon inquiry, told the defendant who the trustees were: Bond, Perine and Bee.

Upon being so informed, he called upon the trustees, Perine and Bee on the same day, and Bond not later than the following day, and they each individually agreed that the defendant would be allowed the privilege of renewing his lease upon the same terms he was then occupying the store room, and for a like period of five years, and he was to pay for the water and lights which, it appears, he had been paying for under a verbal agreement with Randolph, trustee of his lessor. The defendant continued to occupy the building, paying rent regularly, as agreed upon in his lease, to the financial officers of the lodge, till the expiration of his lease, and continued to occupy the room after the expiration of his term, paying the same rent to the officers, without any questions being raised by the plaintiff until about the first of February or March, 1921, when the defendant, being informed that he might have trouble with his lease, went again to the trustees, had a lease prepared in accordance with his former lease except the lessee was to pay for the water and light. The trustees met for the purpose of executing the lease and, at that meeting, a question arose as to whether or not the trustees were authorized to sign the lease. One of the trustees remarked that he was going to Clarksburg and would see an attorney and ascertain who had the authority to execute the lease, and the trustees did not sign the lease at that time, nor did they at any future time sign any lease, to defendant.

Notice was given by the plaintiff, on the 2nd day of May, 1921, to quit and deliver the possession of the premises on the 2nd day of August, 1921; at the same time there was delivered to the defendant an offer to renew his lease on the store room at the rate of $75.00 per month, which offer was refused by the defendant, and this suit was instituted on the 4th day of August, 1921.

The case was first tried by a justice and judgment rendered against the defendant for the store room and $17.50 damages for the detention of same. The case was appealed by the defendant to the Circuit Court and there tried by a jury, which jury, under the instructions by the court, rendered a verdict in favor of the plaintiff for the premises and $898.00 damages for the detention of same, upon which verdict judgment was rendered accordingly. The first error assigned is

that the court erred in directing a verdict for the plaintiff for the possession of the premises and involves the settlement of all the errors assigned and all questions raised in the case

The lease contract between the Salem Land Company and the defendant is as follows:

> "This contract made and entered into Auugust 2nd, 1915, between Central Salem Land Company, parties of the first part, and I. D. Smith, party of the second part, all of the city of Salem, Harrison County, West Virginia.
>
> Witnesseth: That the party of the first part, leases unto the party of the second part, the west room on the first floor of their brick building in said City of Salem, on corner of Main and Irwin streets for five years from this date for Fifty ($50.00) Dollars, payable monthly in advance. Said room is to be furnished with gas and electric fixtures and store connections.
>
> Said second party hereby agrees to keep said room for the said five years and keep the premises in sanitary condition. First party agrees to give second party preference in leasing at the end of this contract in case said room is for lease."

The last clause of the lease, it is contended by the defendant, is a covenant to renew the lease for five years, at $50.00 per month, and many authorities are cited which, it is contended by the defendant's counsel, support that construction.

This is not a covenant of renewal, and means nothing more than that the lessee has the privilege to lease the property at the end of his term, for a term and at a rental to be agreed upon, provided the property is for lease. This clause of the lease does not fix the term nor the amount of rent. 'Like other contracts or agreements for lease, the provision for renewal must be certain in order to be binding and enforceable." 16 R. C. L. Sec. 390.

"A general covenant to renew implies a renewal on the same terms and time as the original lease and is, therefore, sufficiently certain to be enforceable." *id.*

This covenant is not a general covenant to renew nor can it be construed to have that effect. It is not valid as an executory contract and *a fortiori* cannot be pleaded as a defense in the summary action of Unlawful Detainer.

In *Haquard* v. *Sweetwine,* 115 S. E. 797, cited by defendant, the renewal clause is as follows:

> "And to have first privilege of renting said premises for five years longer, at one hundred and twenty five dollars per month."

And, quoting from the opinion, by Judge LIVELY, in that case:

> "It will be observed that the terms of renewal, both as to the length of the term and the rental to be paid are certain."

The defendant's lease expired on the 2nd day of August, 1920, and from that time forward he, having paid rent at the rate of $50.00 per month, was a tenant from month to month, and the rental period could not be extended for five years without a written contract executed by the lodge or its legally authorized agents.

The defendant claims that prior to the expiration of his term he entered into an agreement with the trustees of the plaintiff for a lease of the premises for five years, the lease to contain the same covenants that are set forth in the original lease except that the defendant, under this new lease, was to pay for the water and light. This verbal agreement seems clearly to have been agreed to by the trustees some time in May, 1920, before the original lease expired on the 2nd day of August of that year. This contract was not in writing and was void under the Statute of Frauds. Furthermore it was agreed upon by the trustees individually and at different times and places.

Some time in February or March, 1921, the trustees met at the instance of the defendant for the purpose of executing a lease in accordance with the verbal agreement above referred to, and they failed to execute the lease and no lease was at any time signed by the trustees. Their reason for failing to sign the lease, however, was not that the lease did not conform to their former agreement, made with the individual trustees, but was on the grounds that one of the members raised the question of their authority to execute it.

Their reasons for not executing the lease is not material. The fact is that they did not sign it. The record discloses that, after the expiration of the original lease, the defendant continued to pay and the lodge continued to receive the rent, as stipulated in the original lease, and the defendant continued in possession of the property. The defendant at no time before the expiration of his lease notified the plaintiff lodge of his intentions to renew his lease or of his intention to hold possession under his lease; it is true, however, that he had the verbal agreement referred to above with the trustees, but this agreement was never reported to the lodge, and his holding over and continuing to pay the rent as set forth in his lease contract cannot be held to have the effect of continuing his lease for five years at the same rental.

*Whalen* v. *Manley* 68 W. Va., 328, holds:

> "Holding over and continuing to pay the same rent by lessee under a lease for twelve months, 'with the privilege of renewal for the term of five years, if the said second party so desires, at the expiration of the said first year', without a new lease executed and without notice to the lessor before or at the expiration of the first term of his desire or election to renew said lease for the additional term, renders him tenent from year to year, and subject as such to the rights of the landlord and to be turned out of possession on notice at the end of any subsequent year."

The defendant, from the evidence, was holding over under his verbal arrangement with the trustees. In answer to a question asked him by his counsel, he said:

> "Under the arrangement had with the trustees is the way I thought I was staying there."

He does not pretend that he was occupying the premises under the so called renewal clause in his contract; both he and the board of trustees acted under the assumption that a lease must be executed before he could be allowed, under the law, to hold the property for five years after the expiration of his lease. This is the construction that the parties themselves placed upon the so called covenant of renewal, and if

there was any doubt as to the construction, this construction, given by the parties themselves, would be controlling. But that covenant, as a covenant of renewal, is void for uncerttainty. The defendant would have the court to write into that clause the time and terms of rental. This¹ the court cannot do. Under the guise of construction, courts cannot make contracts that the parties themselves fail to enter into.

The defendant assigns, as error, that the plaintiff was permitted to prove damages in excess of the amount laid in the summons, without an amendment to the summons. This assignment does not seem to be seriously relied upon by defendant's counsel, and we do not deem it necessary to discuss this question further than to cite the cases of *Prible* v. *Stanley,* 74 W. Va., 75; *State ex rel Honaker* v. *Black,* 91 W. Va., 251; and *Lutheran Church* v. *Arkle,* 49 W. Va., 93.

This case has been ably presented by counsel both for the plaintiff and defendant, and many authorities cited in support of their respective contentions; and, after carefully considering the same, we are forced to the conclusion that the lower court did not err in directing the verdict in this case and we, therefore, affirm the judgment.

*Affirmed.*